ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO.   5:15CR463 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | <u>Judge John R. Adams</u> |
| WILLIE MILLER, ) | |
| ) | ORDER |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant Willie Miller's motion for compassionate release. Miezin requests that he be ordered to be placed on home confinement for the duration of the COVID-19 health pandemic.   The motion is DENIED.

COVID-19 is an abbreviation for the novel coronavirus disease of 2019, a respiratory illness that spreads easily and sustainably in the community through respiratory droplets produced when an infected person coughs or sneezes. See Centers for Disease Control and Prevention Coronavirus Disease 2019 Frequently Asked Questions, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#How-COVID-19-Spreads (last visited April 24, 2020). The novel coronavirus of 2019 is a serious disease, ranging from no symptoms or mild ones for people at low risk, to respiratory failure and death in older patients and patients with chronic underlying conditions. *Id*. The virus has been detected in asymptomatic persons, and its incubation period is believed to be up to fourteen days in duration. *Id*.

Currently, there is no vaccine to prevent COVID-19, nor is there antiviral medication that can treat it. *Id.* According to the CDC, "[t]he best way to prevent illness is to avoid being exposed

to the virus." *Id*. The CDC recommends, among other things, that people clean their hands often or use hand sanitizer when soap is unavailable, avoid close contact with other people (at least six feet in distance), and clean and disinfect frequently touched surfaces daily, such as tables, doorknobs, light switches, and countertops. *Id*. The CDC also recommends that if an individual becomes sick, he or she should isolate from others by staying in a specific sick room and using a separate bathroom if possible. *Id*.

The CDC has also indicated that certain classes of individuals are at higher risk for developing severe illness if exposed to the novel coronavirus of 2019. *Id*. Older adults – 65 or older – and people suffering from underlying medical conditions such as moderate to severe asthma, chronic lung disease, serious heart disease, severe obesity, diabetes, liver disease, kidney disease or people who are immunocompromised such as those who are undergoing cancer treatment, smokers, bone marrow or organ transplant recipients or donors, people with immune deficiencies, poorly controlled HIV or AIDS sufferers and those who have prolonged use of corticosteroids and other immune weakening medications are at higher risk of developing serious illness if they are exposed to COVID-19. *Id*. Additionally, the CDC reports that "[a]pproximately 90% of hospitalized patients identified ... had one or more underlying conditions, the most common being obesity, hypertension, chronic lung disease, diabetes mellitus, and cardiovascular disease." *Id*.

Miller seeks release from FCI Gilmer based upon his assertions that the prison is only "pretending to practice" the CDC recommendations. The Court now examines his arguments.

The sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court

to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A). No exceptions to the exhaustion requirement are listed in the statute. While the record is somewhat unclear on whether Miller has exhausted his administrative remedies, the Court will address the merits of his request.

Miller urges this Court to consider him vulnerable under the CDC guidelines because she has asthma[1] and atrial fibrillation. As noted above, this Court may "not modify a term of imprisonment once it has been imposed" unless specifically authorized to do so by section

---

1 Recent reports have suggested that asthma does not present as a significant risk factor for COVID, despite initial reports to the contrary. *See* https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html (detailing two studies suggesting that asthma was not as large a risk factor as initially thought)(last visited 5/19/2020).

3

3582(c). This Court may grant compassionate release if, after considering the factors in 18 U.S.C. § 3553(a), it determines that "extraordinary and compelling reasons" warrant a reduced sentence and that "such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c)(1)(A)(i). The relevant governing policy statement provides that this Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. §1B1.13.

The application note to U.S.S.G. §1B1.13 further defines the "extraordinary and compelling circumstances" required to merit consideration for compassionate release:

> Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is--
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is

experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.--

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons. --As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13 (Application Note 1). Miller appears to rely upon subsection (D) to support his motion, asserting that the pandemic qualifies as an "Other Reason" supporting release. However, even assuming the pandemic is a proper foundation, Miller cannot satisfy the initial prong[2] of review – "Provided the defendant meets the requirements of subdivision (2)." Subdivision 2 notes that compassionate release cannot be ordered unless "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

On November 17, 2016, Miller pled guilty to conspiracy to possess with intent to distribute more than 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Within his plea agreement, Miller admitted that he was responsible for between 400 and 700 grams of heroin. Miller's most recent conviction, however, is but one component of analyzing his danger to society. While Miller was only 32 at the time of sentencing, this conviction was far from his first serious

---

2 The most recent public information indicated a total of 5 positive COVID cases at FCI Gilmer. It also appeared that all 5 cases stemmed from transfers. Thus, it is highly likely that Miller cannot satisfy even the first prong in support of his request for compassionate release.

offense. In 2004, at the age of 19, Miller was convicted in Michigan of the manufacture and delivery of controlled substances. Miller's sentence of 22 months of probation did not serve to deter his criminal conduct. Just a few months later in July of 2004, Miller pled no contest to assault. Miller's conduct was described as follows:

> On July 24, 2004, a victim (Mario McClinton) was at Club M and M Lounge. He was involved in a physical altercation with four to five males in the establishment. Another victim (Darwin Saunders) observed the altercation and intervened by stepping between Mario McClinton and another male, by attempting to deescalate the situation. Darwin Saunders observed a male, later identified as Willie Miller, pull a hand gun from his waist band and fire one shot. The shot passed through Darwin Saunders' left hand and struck Mario McClinton in the left side. Willie Miller and the other males left the location and fled in a vehicle.

Doc. 67 at 11. Miller was paroled after only roughly three years incarceration. Miller, however, did not successfully complete his parole and was returned to prison for roughly 18 months. Miller's parole violation was described as follows: "On May 22, 2010, Miller was involved in new criminal conduct, including physically striking and shooting at a victim, his girlfriend, and her family, in their residence; possession of a firearm as a felon; failing to report as directed; and failing to submit to a drug test as directed." Doc. 67 at 12. Finally, while the facts that generated it are not before this Court, it is undisputed that at the time of his sentencing, Miller was subject to a protective order issued on behalf of Shannay Holmes by the family division of a Michigan court.

Miller's history indicates that his release now would great an immediate danger to the community. Miller has consistently engaged in both drug dealing and violent behavior since he reached the age of majority. After serving three years in prison starting at the age of 19, Miller could not complete two years of probation. Instead, he again engaged in violent behavior with a firearm – this time against his girlfriend. Miller completed his second term of parole related to

assault conviction on June 29, 2013. Miller then pled guilty to the instant offense which charged a conspiracy that began in September 2013. Thus, by appearance, Miller returned to criminal conduct within 60 days the termination of his probation. While unfortunate, Miller has shown a complete inability to comply with the law. Accordingly, the Court finds that Miller would be a danger to the community if he were released. As a result, he cannot satisfy the requirements for compassionate release. Miller's motion is DENIED.

        IT IS SO ORDERED.


<u>May 19, 2020</u>                                                                                     */s/John R. Adams*
Date                                                                                      JOHN R. ADAMS
                                                                                            UNITED STATES DISTRICT JUDGE